FILED

2014 MAR 19 PM 2:30

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAMON SALAZAR VASQUEZ,
PORFIRIO AGUILAR FABIAN,
ERNESTO AGUILAR BOCANEGRA,
MACODONIO AMBROCIO MATIAS,
FILIBERTO BAUTISTA,
JOSUE CARRILLO ORTIZ,
AGUSTIN CRISTEN TEJEDA,
LUIS ALBERTO CRUZ VASQUEZ,
PEDRO CRUZ VASQUEZ,
JOSE ALBERTO GARCIA RODRIGUEZ,
ESTEBAN GONZALEZ MARQUES,
GUSTAVO GONZALEZ MARTINEZ,
FERNANDO GONZALEZ PEREZ,
ISAAC GONZALEZ TREJO,
FELICIANO LOPEZ CRUZ,
MIGUEL MACIAS DE LUNA,
RENE MARTINEZ MARTINEZ,
ANTONIO MENDEZ GARCIA,
MARCOS MARQUEZ MAR,
BONIFACIO MARQUEZ MARQUEZ,
ROBERTO CARLOS MARQUEZ,
CLAUDIO SERAFIN MARTINEZ,
GIOVANNI SERAFIN MARTINEZ,
FRANCISCO OSARIO DEL ANGEL,
SAUL PEREZ MENDEZ,
FRANCISCO BRUNO PERIAÑEZ,
JOSE RAMOS RAMOS,
CANDIDO RAMIREZ ORTEGA,
FELIPE REYES SALVADOR,
BERTIN ROJAS LOPEZ,
MELITON SALAZAR RODRIGUEZ,
UZIEL SANTIAGO MARTINEZ,
JAVIER VASQUEZ HERNANDEZ,
RICARDO VITE XOTHIHUA,

Plaintiffs,

v.

CIVIL ACTION
No.

2:14-cv-161-FtM-29 CM

JOHN E. STEELE

CAROL MIRANDO

P & L HARVESTING, LLC,

Defendant.

______________________________/

## COMPLAINT FOR DAMAGES

## PRELIMINARY STATEMENT

1. This is an action by thirty-four Mexican nationals who lawfully entered the United States as guest laborers to pick citrus fruit for Defendant P & L Harvesting, LLC ("P & L Harvesting") in south and central Florida during the 2011-12 harvest season. Plaintiffs bring this action to recover minimum wages due them under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, *et seq* and the minimum wage provisions of the Florida Constitution. In addition, Plaintiffs seek damages for Defendant's breaches of numerous provisions of their work contract with Plaintiffs. These contractual breaches include Defendant's failure to reimburse Plaintiffs for the costs of their inbound and outbound transportation between Defendant's worksite and Plaintiffs' homes in Mexico, maintain payroll records as promised in Plaintiffs' contracts and as required by applicable federal regulations, provide tools and equipment to Plaintiffs free of charge, pay Plaintiffs at least the minimum wage, adverse effect wage rate or the prevailing wage rate, and provide a copy of the work contract in a language Plaintiffs could reasonably understand.

2. Plaintiffs entered the United States pursuant to temporary H-2A visas for employment with P & L Harvesting during the 2011-12 Florida citrus harvest. P & L Harvesting paid Plaintiffs in piece-rates (certain sums per bin of oranges) without properly supplementing Plaintiffs' pay. As a result, Plaintiffs' earnings routinely fell below wage levels dictated

by H-2A regulations and, at times, the FLSA and the minimum wage provisions of Florida law. Plaintiffs incurred significant costs in order to travel to Defendant's worksite in Florida from their homes in Mexico and to return home again at the end of the season. Plaintiffs were never reimbursed for these expenses as required by H-2A regulations and Plaintiffs' contracts. Likewise, Plaintiffs also had to buy their own picking sacks, and gloves which were never reimbursed by Defendant.

3. Plaintiffs mailed a notice of intent to sue to Defendant on September 6, 2012 detailing the minimum wage to which Plaintiffs claim entitlement, the estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice pursuant to F.S. 448.110(6)(a) (2013). Defendant did not pay any amount of unpaid wages nor did it otherwise settle the claims to Plaintiffs' satisfaction.

4. Plaintiffs seek an award of money damages to make them whole for damages due to Defendant's violations of the law.

## JURISDICTION

5. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this action arising under the FLSA; by 28 U.S.C. §1331, this action arising under the laws of the United States and presenting state law claims that implicate significant federal issues; and by 28 U.S.C. §1367 providing supplemental jurisdiction over the common law claims. This Court has supplemental jurisdiction over the claims arising under the state law because these claims are so related to the federal claims that they form part of the same case or controversy.

## VENUE

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

7. Plaintiffs are each citizens of Mexico who reside in the Mexican states of Veracruz, Querétaro, Oaxaca, or Tamaulipas. Plaintiffs were admitted to the United States on a temporary basis pursuant to 8 U.S.C. §1101(a)(15)(H)(ii)(a) to hand-pick citrus fruit for Defendant during the 2011-12 Florida citrusharvest. At all times relevent to this action, Plaintiffs were employed in the production of goods for interstate commerce, within the meaning of the FLSA.

8. Defendant P & L Harvesting is a Florida Limited Liability Company with its principal address in Lee County, Florida. At all times relevant to the action, Defendant P & L Harvesting employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(d), and the H-2A regulations, 20 C.F.R. § 655.100 *et seq.*

## FACTS

9. An agricultural employer in the United States may import aliens to perform labor of a temporary nature if the U.S. Department of Labor certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§1101(a)(15)(H)(ii)(a) and 1188(a)(1) (2013), and 20 C.F.R. § 655.100 (2013). Aliens admitted in this fashion are commonly referred to as "H-2A workers."

10. Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the U.S. Department of Labor. 20 C.F.R. §§655.0(a)(2), 655.102, and 655.103 (2013). This application must include a job offer, commonly referred to as a "clearance order," complying with applicable regulations, which is used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. 655.0(a)(2), 655.102(b), and 655.103 (2013). The essential terms of the clearance order are dictated by federal regulations at 20 C.F.R. §§ 655.102, 655.103, 655.122, and 653.501. Among these terms, the applicant employer makes the following promises and assurances:

a. To pay all workers at least the applicable adverse effect wage rate or prevailing wage or piece rate for every hour or portion thereof worked during a pay period. 20 C.F.R. §§655.120(a). The applicable adverse effect wage rate for Florida was $9.50 per hour from the beginning of the harvest through the end of 2011, and $9.54 per hour through the conclusion of the 2012 harvest season.

b. An assurance that the employer will keep accurate and adequate records with respect to the workers' earnings and the hours actually worked by the worker and the daily starting and stopping time for work. 20 C.F.R. §§655.122(j)(1) and (2) (2013);

c. An assurance that the employer will furnish to the worker each payday an hours and earnings statement showing the hours of work offered, the hours actually worked, and the piece-work units produced daily. 20 C.F.R. §655.122(k)(4) (2013);

d. An assurance that the employer will abide by the requirements of 20 C.F.R. §653.501, including the requirements of 20 C.F.R. §655.120(a), mandating compliance with state and federal minimum wage laws;

e. An assurance that, for individuals who work until the 50% date of the contract period, the employer will provide or pay for transportation costs from the worker's home and the employer's jobsite and subsistence *en route*. 20 C.F.R. §655.122(h)(1) (2013);

f. An assurance that the employer will provide or pay for transportation costs from the worksite to the workers' homes and subsistence *en route* for those individuals who complete the contract period. 20 C.F.R. §655.122(h)(2) (2013); and

g. An assurance that the employer will provide the workers with all tools, supplies, and equipment needed to perform the duties assigned, free of charge. 20 C.F.R. §655.122(f) (2013).

11. The clearance order also functions as an employment contract between the agricultural employer and H-2A workers in accordance with 20 C.F.R. § 655.122(q).

12. On September 6, 2011, P & L Harvesting filed an application to employ 325 temporary foreign workers for the 2011 – 12 harvest season through the H-2A program.

13. As part of the temporary labor certification application described in Paragraph 10, P & L Harvesting submitted a clearance order to the United States Department of Labor, which contained a certification that the order described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. §653.501(d)(3). The clearance order ("employment contract") functions as an employment contract between P & L Harvesting and Plaintiffs in accordance with 20

C.F.R. § 655.122(q).

14. The United States Department of Labor accepted the temporary labor certification application and employment contract submitted on behalf of P & L Harvesting and circulated the employment contract to local job service offices in an effort to recruit U.S. workers to fill the positions offered. The Chicago National Processing Center of the U.S. Department of Labor later granted Defendant's temporary labor certification application in full and certified the admission of 325 foreign workers to fill the positions described in the employment contract. The United States Customs and Immigration Services of the Department of Homeland Security issued H-2A visas to fill the manpower needs described in the employment contract.

15. The employment contract explicitly and implicitly incorporated the Department of Labor regulations at 20 C.F.R. §655 Subpart B, including the terms described in Paragraphs 10 and 12.

16. Following their recruitment, at their own expense, Plaintiffs traveled from their respective homes to Monterrey, Nuevo Leon, Mexico, to apply for H-2A visas. After arriving in Monterrey on the dates specified to them by P & L Harvesting, Plaintiffs incurred lodging expenses for three to four days while they awaited the processing of their visa applications.

17. In Monterrey, Plaintiffs also paid a fee for assistance applying for an H-2A visa and paid a fee to have passport photos taken. At the U.S.-Mexico border, Plaintiffs paid U.S. immigration officials a fee of six dollars for issuance of Form I-94 as a prerequisite for entering the U.S.

18. Plaintiffs incurred subsistence expenses during their travel from their homes to

Monterrey, Mexico, their stays in Monterrey, Mexico while waiting for their visas to be processed, and their travel from Monterrey, Mexico to Defendant's jobsite in Florida.

19. The transportation, lodging, and fee expenses incurred by Plaintiffs in preparation for working for Defendant, as described in Paragraphs 15 - 17, were incurred primarily for the benefit of Defendant. Plaintiffs were not reimbursed for these expenses during the first week of their employment with Defendant, or at any time. These expenses function as deductions from Plaintiffs' first full week of pay, bringing Plaintiffs' hourly pay below the federal minimum wage rate.

20. All Plaintiffs worked from the beginning of the 2011 – 12 harvesting season through the 50% date of the contract, which was March 02, 2012.

21. As described in Paragraph 10, Defendant made an assurance, as a term of the employment contract, to reimburse workers who worked through the 50% date of the contract for transportation and subsistence *en route* expenses from their homes to the worksite. Defendant violated the employment contract by not reimbursing Plaintiffs.

22. Plaintiffs Ramon Salazar Vasquez, Porfirio Aguilar Fabian, Filiberto Bautista, Josue Carillo Ortiz, Agustin Cristen Tejeda, Luis Alberto Cruz Vasquez, Pedro Cruz Vasquez, Jose A. Garcia Rodriguez, Estaban Gonzalez Marques, Gustavo Gonzalez Martinez, Fernando Gonzalez Perez, Isaac Gonzalez Trejo, Feliciano Lopez Cruz, Rene Martinez Martinez, Antonio Mendez Garcia, Marcos Marquez Mar, Roberto Carlos Marquez, Claudio Serafin Martinez, Giovanni Serafin Martinez, Francisco Osorio del Angel, Saul Perez Mendez, Jose Ramos Ramos, Candido Ramirez Ortega, Felipe Reyes Salvador, Bertin Rojas Lopez, Meliton Salazar Rodriguez, and Javier Vasquez Hernandez, worked through the entire 2011 – 12 harvesting season.

23. As described in Paragraph 10, Defendant promised, as a term of the employment contract, to reimburse Plaintiffs for transportation and subsistence expenses *en route* from the worksite to their homes. Defendant violated the employment contract by not reimbursing Plaintiffs for these expenses.

24. Plaintiffs incurred subsistence expenses traveling from Florida back to their homes in Mexico after the work ended.

25. In violation of the employment contract, Plaintiffs were not reimbursed for subsistence expenses they incurred while traveling from their homes to Monterrey, waiting for their visas to be processed, and traveling the remaining distance to their worksite, as described in Paragraphs 15 - 18.

26. While working for P & L Harvesting and as specified in the employment contract, Plaintiffs were required to pick citrus into picking sacks. P & L Harvesting did not provide picking sacks to Plaintiffs. As a result, Plaintiffs bought their own picking sacks to pick oranges into in order to work for P & L Harvesting. These picking sacks were bought for the primary benefit of P & L Harvesting.

27. While working for P & L Harvesting and as specified in the employment contract, Plaintiffs needed gloves to protect their hands from the branches on the citrus trees from which they were picking fruit. No such gloves were provided to Plaintiffs. Each Plaintiff bought two to three sets of gloves each week they worked for P &L Harvesting. The expense of buying gloves was primarily for the benefit of P & L Harvesting.

28. Plaintiffs worked picking citrus fruit with P & L Harvesting during the 2011 – 12 harvest season, performing the tasks set out in the employment contract. Plaintiffs were paid a piece rate and an additional sum of money; however, their hourly wage frequently fell

short of the contractual wage promised under the contract.

29. In the event that the wages paid under the piece rate were lower than the hourly rate required by the employment contract, or federal or state minimum wage rate, Defendant was required to add to Plaintiffs' pay to bring their wage up to the required wage. This added sum is commonly referred to as a "top up" wage.

30. Defendant did not record the start or stop times Plaintiffs worked each day. As a result, the hours and earnings statements provided to Plaintiffs did not reflect the accurate number of hours Plaintiffs worked.

31. The hours reported on the hours and earnings statements were routinely fewer than the hours actually worked by Plaintiffs. Consequently, Defendants did not provide Plaintiffs with the "top up" wages necessary to bring Plaintiffs' earnings up to the required hourly wages.

32. Defendant violated 20 CFR §655.122(j)(1) by failing to keep accurate and adequate records of the hours Plaintiffs worked.

33. P & L Harvesting failed to keep accurate records as to the hours Plaintiffs were employed. On its payroll records and on the wage statements issued to Plaintiffs, P & L Harvesting under-reported the hours worked in an effort to conceal its failure to pay wages as required by federal and state law and by its employment contract with Plaintiffs. Among other things, although Plaintiffs picked fruit for P & L Harvesting on several Sundays, the payroll records did not include this work.

34. The piece-rate earnings of Plaintiffs on many occasions totaled less than the amount required under the applicable hourly adverse effect wage rate. *See* 20 C.F.R. §655.120(a). At times, these piece-rate earnings were less than the amount due under the minimum

hourly wage provisions of the FLSA, 29 U.S.C. §206(a) and the Florida Constitution.

35. As a result of the practices described in Paragraphs 28 – 34 Plaintiffs did not receive the applicable adverse effect wage rate, as promised by the P & L Harvesting employment contract and required by 20 C.F.R. §655.120(a).

36. As a result of the practices described in Paragraphs 28 – 34, several Plaintiffs did not receive the pay period earnings at least equal to the minimum wage required by the FLSA and the minimum wage provisions of the Florida Constitution, Art. 10 §24.

37. P & L Harvesting provided Plaintiffs with weekly paychecks and wage statements. As a result of the practices described in Paragraphs 30 – 33, the wage statements provided to Plaintiffs were inaccurate because they did not accurately show the hours that Plaintiffs worked.

38. Defendant failed to pay the remaining transportation, lodging, and fee expenses incurred during Plaintiffs' travel from their homes to the jobsite not paid under the minimum wage laws and subsistence *en route*, in violation of the employment contract and 20 C.F.R. §655.122(h)(1).

39. Defendant violated 20 C.F.R. §655.122(h)(2), as incorporated in the employment contract, by failing to pay subsistence costs for Plaintiffs on the return trip from the jobsite to their homes.

40. Defendant violated 20 C.F.R. §655.122(f) by failing to provide Plaintiffs with picking sacks and gloves.

## CLAIMS FOR RELIEF

## COUNT I

## (FAIR LABOR STANDARDS ACT)

41. This count sets forth a claim for damages by Plaintiffs for Defendant's violations of the minimum wage provisions of the FLSA.

42. Defendant violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay Plaintiffs at least $7.25 for every compensable hour for each workweek during the 2011 – 12 citrus harvest.

43. The violations of the FLSA as set out in Paragraph 36 resulted in part from Defendant's failure to record the hours that Plaintiffs worked, and properly supplement employees' earnings when the piece-rate dropped below the FLSA minimum wage as set out in Paragraph 42.

44. The violations of the FLSA as set out in Paragraph 42 resulted in part from Defendant's failure to fully reimburse Plaintiffs during their first week of employment for facilities primarily benefitting Defendant, including lodging expenses in Monterrey, a fee for issuance of Form I-94, and the full costs of Plaintiffs' travel from their homes to the area of Defendant's jobsite, as set out in Paragraph 16, 17, and 19.

45. The violations of FLSA as set out in Paragraph 42 resulted in part from Defendant's failure to provide picking sacks and gloves for Plaintiffs, as set out in Paragraphs 26, 27 and 40.

46. As a consequence of Defendant's violations of the FLSA as set out in this count, each Plaintiff is entitled to his unpaid minimum wages, plus an additional equal amount in

liquidated damages, pursuant to 29 U.S.C. §216(b).

**COUNT II**

**(BREACH OF CONTRACT)**

47. This count sets forth a claim by Plaintiffs for damages arising from Defendant's breaches of the employment contract.

48. Defendant breached its employment contract with Plaintiffs by providing terms and conditions of employment that were materially different from those written in the employment contract, including the following:

    a. Plaintiffs were not paid at least the adverse effect wage rate for their labor, as set out in Paragraphs 35;

    b. Defendant did not reimburse Plaintiffs for costs they incurred for transportation, fees, lodging, and subsistence from their respective homes to the jobsite prior to the contract period of employment, as set out in Paragraphs 38;

    c. Defendant did not reimburse Plaintiffs who worked through the entire 2011-12 harvest season for subsistence costs incurred *en route* from the jobsite to their respective homes following the contract period of employment, as set out in Paragraphs 39;

    d. Defendant failed to comply with the FLSA and minimum wage provisions of the Florida Constitution, as set out in Paragraph 36; and

    e. The wage statements furnished by Defendant on payday did not accurately reflect the hours that Plaintiffs worked because Defendant failed to consistently and

accurately record the hours worked by Plaintiffs, as set out in Paragraph 37.

f. Defendant failed to reimburse Plaintiffs for the costs of picking sacks and gloves as set out in Paragraphs 40.

49. Defendant's breaches of contract with Plaintiffs have caused Plaintiffs grave financial injuries.

## COUNT III

## (MINIMUM WAGE PROVISIONS OF THE FLORIDA CONSTITUTION)

50. This count sets forth a claim for damages by Plaintiffs for Defendant's violations of the minimum wage provisions of the Florida Constitution.

51. Defendant violated the minimum wage provisions of the Florida Constitution Article 10, §24 by failing to pay Plaintiffs at least $7.25 for every compensable hour for each workweek during 2011 and at least $7.67 during for every compensable hour for each workweek 2012.

52. The violations of the minimum wage provisions of the Florida Constitution resulted in part from Defendant's failure to increase Plaintiffs' pay when their pay fell below the minimum wage, as set out in Paragraphs 36.

53. The violations of the minimum wage provisions of the Florida Constitution resulted in part from Defendant's failure to fully reimburse Plaintiffs during their first week of employment for pre-employment expenses incurred primarily for Defendant's benefit, as set out in Paragraphs 19.

54. The violations of the minimum wage provisions of the Florida Constitution resulted in

part from Defendant's failure to provide Plaintiffs with picking sacks and gloves as set out in Paragraph 40.

55. As a consequence of Defendant's violations of the minimum wage provisions of the Florida Constitution set out in this count, Plaintiffs are entitled to recover the amount of their respective unpaid minimum wages, and an equal amount of liquidated damages, pursuant to Art. 10 §24(e) of the Florida Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

a. Granting judgment in favor of Plaintiffs and against Defendant, jointly and severally, on Plaintiffs' FLSA claims as set forth in Count II, and awarding each Plaintiff the amount of his unpaid minimum wages and an equal amount of liquidated damages;

b. Granting judgment in favor of Plaintiffs and against Defendant, jointly and severally, on the contract claims as set forth in Count I and awarding Plaintiffs their actual and compensatory damages;

c. Granting judgment in favor of Plaintiffs and against Defendant, jointly and severally, on these workers' claims under the minimum wage provisions of the Florida Constitution as set forth in Count III and awarding each of them his unpaid minimum wages and an equal amount in liquidated damages;

d. Awarding Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C. §216 and Art. 10, §24 of the Florida Constitution;

e. Awarding Plaintiffs the costs of the action; and

f. Granting such further relief as this Court deems just and appropriate

Respectfully submitted,

*s/Andrea Ortega*

Andrea Ortega, Esq.
Florida Bar Number 0097651
Florida Rural Legal Services
3210 Cleveland Ave. #101
Fort Myers, FL 33901
Telephone: (239) 334-4554 ext. 4120
Fax: (239) 334-3042
andrea.ortega@frls.org

*s/Amanda Caldwell*

Amanda Caldwell, Esq.
Florida Bar Number 0064237
Florida Rural Legal Services
3210 Cleveland Ave. #101
Fort Myers, FL 33901
Telephone: (239) 334-4554 ext. 4112
Fax: (239) 334-3042
Amanda.caldwell@frls.org

*Attorneys for Plaintiffs*